ORDERED.

Dated: June 18, 2015

*Caryl E. Delano*
Caryl E. Delano
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION
www.flmb.uscourts.gov

In re:

Mildred M. Dukes,                                Case No. 9:09-bk-02778-FMD
                                                           Chapter 13

    Debtor.
_____/

Suncoast Credit Union,

    Plaintiff,

v.                                                  Adv. Pro. No. 9:14-ap-00569-FMD

Mildred M. Dukes,

    Defendant.
_____/

**MEMORANDUM OPINION DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 25)
AND GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 29)**

Debtor's confirmed Chapter 13 plan provided for Debtor to make payments "outside the plan" directly to the holder of two mortgages on her principal residence. Debtor completed her Chapter 13 plan and received a discharge. The mortgage holder filed this adversary proceeding seeking a judicial determination that its claims have not been discharged. Both parties have moved for summary judgment. The Court concludes that a Chapter 13 plan that proposes to pay a secured

creditor directly outside the plan "leaves unaffected" the rights of that creditor under § 1322(b)(2)[1] and does not "provide for the debt" owed to the creditor such that the debt is discharged under § 1328(a). Therefore, Debtor's Chapter 13 discharge did not include the discharge of her obligations to the mortgage holder.

## BACKGROUND

Debtor, Mildred M. Dukes, filed her Chapter 13 bankruptcy case on February 18, 2009. In her bankruptcy schedules, Debtor listed Suncoast Schools Federal Credit Union[2] ("Suncoast") as the holder of both the first and second mortgages on her homestead property. Both mortgages mature in 2022. When Debtor filed her bankruptcy petition, she was current on both loans.[3]

Debtor's Chapter 13 plan (the "Plan") stated that payments on Suncoast's loans would be "[p]aid directly to the [c]reditor."[4] In the section of the Plan where Debtor could have elected to pay secured creditors "through the Plan," the Plan stated "N/A."[5] After filing her Plan, Debtor moved for authority to make her mortgage payments directly to Suncoast.[6] The orders granting Debtor's motions stated "the automatic stay and discharge injunction are hereby terminated with respect to the Creditor to seek *in rem* relief against the property securing the Creditor's claim."[7] On May 13, 2010, Debtor's Plan was confirmed.[8] Debtor made all of the payments under the Plan and her Chapter 13 discharge was entered on March 29, 2012.[9]

---

[1] All statutory references are to the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*
[2] Suncoast Schools Federal Credit Union is now known as Suncoast Credit Union.
[3] Doc. No. 2; Proof of Claim No. 12.
[4] Doc. No. 2, p. 2.
[5] *Id.*
[6] Doc. Nos. 17, 18.
[7] Doc. Nos. 19, 20.
[8] Doc. No. 42.
[9] Doc. No. 56.

Subsequently, Suncoast moved to reopen the case and filed this adversary proceeding, seeking a determination that its claims have not been discharged.[10] Debtor filed her answer and a two-count counterclaim, asking the Court to determine that Suncoast's claims have been discharged and for violation of the discharge injunction.[11] Both parties moved for summary judgment.[12] The parties agree that there are no material factual disputes and that the Court may rule as a matter of law.

## **DISCUSSION**

### *Summary Judgment Standard*

Rule 56(a) of the Federal Rules of Civil Procedure, incorporated by Fed. R. Bankr. P. 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The material facts in this case are undisputed, and the parties have asked the Court to resolve an issue of law. Accordingly, entry of summary judgment is appropriate.

### *The Chapter 13 Plan*

Under § 1321, only the debtor may propose a Chapter 13 plan. Confirmation of a Chapter 13 plan is governed by two sections of the Bankruptcy Code: § 1322, titled "Contents of plan," and § 1325, titled "Confirmation of plan."

### *Section 1322 - Contents of plan*

Section 1322(a)(1) provides that the debtor shall "submit future income" (i.e., make payments) to the Chapter 13 trustee as necessary for the execution of the plan. Payments are made over a three- to five-year time period.[13]

---

[10] Adv. Doc. No. 14.
[11] Adv. Doc. No. 22.
[12] Adv. Doc. Nos. 25, 29.
[13] § 1322(d).

Section 1322(b)(2) permits a plan to

> modify the rights holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured creditors, or leave unaffected the rights of holders of any class of claims.

Section 1322(b)(2)'s prohibition against the modification of claims secured by security interests in real property that is the debtor's principal residence is commonly referred to as the "anti-modification provision." Section 1322(b)(5) permits a plan, notwithstanding the anti-modification provision, to provide for the curing of any default and maintenance of payments on secured and unsecured claims on which the last payment is due after the final plan payment is due.[14] Section 1322(c)(2) excepts short term mortgages from the anti-modification provision; if a debt secured by a mortgage on the debtor's principal residence becomes due *before* the last payment is due under the plan, § 1322(c)(2) allows the plan to provide for the payment of the claim as modified under § 1325(a)(5). In other words, if the last payment on the mortgage on the debtor's principal residence becomes due before the final plan payment is due, the Chapter 13 debtor may bifurcate the claim into secured and unsecured portions and pay the secured claim through the plan.[15]

*Section 1325 - Confirmation of plan*

Section 1325(a)(5) provides that the court shall confirm the debtor's plan if, with respect to secured creditors whose claims are provided for by the plan, one of three requirements is met: either the secured creditor has accepted the plan; the secured creditor retains its lien until discharge and the value of the property to be distributed to the claimant is not less than the allowed amount of the claim, which, if paid in periodic payments, shall be in equal monthly amounts; *or* the debtor surrenders the property securing the claim to the creditors. The arrearages on a mortgage claim are

---

[14] Claims treated pursuant to § 1322(b)(5) are commonly referred to as "long term debt."
[15] *In re Paschen*, 296 F.3d 1203 (11th Cir. 2002), *cert. denied, American General Finance, Inc. v. Paschen*, 537 U.S. 1097, 123 S.Ct. 696, 154 L.Ed.2d 648, 71 USLW 3292, 71 USLW 3411, 71 USLW 3416 (U.S. Dec. 16, 2002).

deemed to be a distinct claim that may be paid over time—even over the objection of the secured creditor—under §1325(a)(5)(B).[16]

### *The Chapter 13 Debtor's Options*

Together, the provisions of §§ 1322 and 1325 give a Chapter 13 debtor who wishes to retain his home several options with respect to the treatment of a mortgage claim against the property. Under § 1322(b)(2), the debtor may choose to leave the rights of the mortgage holder unaffected; under § 1322(b)(5), if the final payment under the mortgage is due after the last plan payment, the debtor may cure arrearages through plan payments made to the trustee while maintaining postpetition mortgage payments either "through the plan" or directly to the mortgage holder;[17] and, under § 1322(c)(2), if the mortgage loan matures during the plan period, the debtor may modify the loan and pay the secured portion of the loan over the plan period. Under § 1325(a)(5), the Court will confirm a plan containing any of these provisions.

Here, Debtor specifically chose to pay make payments directly to Suncoast without modifying in any way her obligations to Suncoast, thereby leaving Suncoast's rights unaffected by the plan under § 1322(b)(2).

### *The Chapter 13 Discharge*

As outlined in § 1328, when a Chapter 13 debtor has completed all payments under his plan, he is entitled to a discharge of all debts "provided for by the plan." Section 1328(a)(1) specifically provides that a debt provided for under § 1322(b)(5)—which permits the curing of arrearages and the maintenance of payments on long term debt—is excepted from a debtor's Chapter 13 discharge. In other words, if a debtor's plan provides for the cure of any default and maintenance of payments

---

[16] *Rake v. Wade*, 508 U.S. 464, 473, 113 S.Ct. 2187, 2192-93 (1993).
[17] Chapter 13 debtors in the Tampa and Fort Myers Divisions of the Middle District of Florida whose plans provide to cure the default in payments on their home mortgage are required to pay their postpetition mortgage "inside the plan" through payments made to the Chapter 13 trustee.

5

on long term debt, whether secured or unsecured, the debtor is not discharged from that debt.[18] Section 1328 is silent as to whether a debt "left unaffected" under § 1322(b)(2) is excepted from discharge.

### *Meaning of "provided for by the plan"*

The question in this case is whether the Plan "provided for" Suncoast's claims when the Plan's only reference to those claims was that the Debtor would pay them directly to Suncoast. The Court concludes that because Debtor left the rights of Suncoast unaffected, her plan did not provide for Suncoast and the obligation to Suncoast is not discharged.

In *Rake v. Wade*,[19] the Supreme Court discussed the meaning of the phrase "provided for by the plan" as used in § 1325(a)(5). The Court stated that "[t]he most natural reading of the phrase to 'provid[e] for by the plan' is to 'make a provision for' or 'stipulate to' something in a plan."[20] The Supreme Court then concluded that the plans in two separate Chapter 13 cases provided for the creditor's claims because the debtors had split the creditor's secured claim into two separate claims: one for the underlying debt and the other for the arrearages.[21] The Supreme Court held that the debtors' plans "provided for" the arrearages because the plans "treated" the arrearages as a "distinct" claim to be paid during the life of the debtors' plans according to the payment schedules outlined in the plans.[22]

---

[18] This exception to discharge is repeated in § 1328(c)(1), which excepts from discharge an unsecured "long term debt" provided for under § 1322(b)(5).
[19] 508 U.S. 464, 113 S. Ct. 2187 (1993).
[20] 508 U.S. at 473.
[21] *Id.* The issue in *Rake v. Wade* was whether a debtor was required to pay interest on arrearages being cured through a Chapter 13 plan. The Supreme Court held that interest was required. Thereafter, Congress counteracted the Court's holding by enacting § 1322(e).
[22] *Id.*

6

Debtor relies on *In re Rogers* to support her claim that a plan's mere reference to a claim is sufficient for the plan to have "provided for the claim."[23] In *Rogers*, the debtors' plan proposed to pay the secured mortgage creditor, to whom payments were otherwise current, directly outside the plan under the terms of the mortgage. After the debtors received their discharge, they defaulted in their payments and the mortgage holder sued to foreclose. After applying the foreclosure sale proceeds to the outstanding balance due under its note, the mortgage holder filed a separate suit against the debtors to recover the deficiency balance. The *Rogers* court held that the creditor's deficiency claim had been discharged and that the debtors were not personally liable for the deficiency.

The *Rogers* court, citing *Rake v. Wade*, adopted a broad view of what it means for a claim to be "provided for by the plan" and held that a plan provides for a debt if the plan "deals with" or even "refers to" a particular claim.[24] The *Rogers* court held that the mere reference to a claim—even if that reference does nothing more than state that the claim will be paid directly outside the plan—constitutes "provided for by the plan" within the meaning of § 1328(a). And the court held that unless one of the exceptions from discharge listed in § 1328(a) is present, a claim "provided for by the plan," including a claim that is paid by the debtor directly to the creditor outside the plan, is subject to the debtor's discharge.

Taking this analysis one step further, the court in *In re Cramer*[25] held that a Chapter 13 plan that provided for the debtors to make direct payments to their secured creditor did not provide for the creditor's claim under § 1322(b)(5) because the plan did not provide for the cure of any default. Therefore, the court concluded, the debt was not excepted from discharge under § 1328(a)(1). In

---

[23] 494 B.R. 664 (Bankr. E.D.N.C. 2013).
[24] *Rogers*, 494 B.R. at 667 (citing *Rake v. Wade*, 508 U.S. at 474).
[25] 477 B.R. 736 (Bankr. E.D. Wis. 2012).

7

other words, the *Cramer* court held that the exception to discharge under § 1328(a)(1) for debts provided for under §1322(b)(5) only applies if the plan proposes to cure a default on the obligation.

But other courts have reached the opposite conclusion. In *In re Huyck*,[26] the court held that claims paid directly to creditors outside the plan are not provided for by the plan. In *Huyck,* the creditor's claim, not secured solely by the debtor's principal residence, was not subject to the anti-modification provision of § 1322(b)(2); the debtors' plan proposed for the debtors to cure mortgage arrearages through their Chapter 13 plan and for the debtors to pay their regular monthly mortgage payments directly to the mortgage holder outside the plan. The *Huyck* court—without discussion of the exception to discharge under § 1328(a)(1) for claims that the plan proposes to "cure and maintain" under §1322(b)(5)—held that while the claim for arrearages was provided for by the plan, the regular monthly principal and interest payments were not.[27] The court specifically found that one consequence of the debtors' choice to make regular payments to the secured creditor outside the plan was that the debt would not be discharged under § 1328(a).[28]

The court in *In re Hunt*[29] held that the debtor's plan, that proposed to pay the mortgage holder on his principal residence outside the plan, would not be discharged upon the completion of payments under the plan. The court, citing *Jones v. Branch Banking & Trust Co.*,[30] held that nothing in the words "curing of any default" in § 1322(b)(5) suggests that § 1322(b)(5) is restricted to circumstances where a default exists on the petition date. The *Hunt* court also points out that the discharge of a debtor's personal liability on a claim secured solely by the debtor's principal residence would be an impermissible modification of the loan in contravention of § 1322(b)(2).

---

[26] 252 B.R. 509 (Bankr. D. Colo. 2000).
[27] *Id.* at 514.
[28] *Id.*
[29] 2015 WL 128048 (Bankr. E.D.N.C. Jan. 7, 2015).
[30] Case No. 5:09-CV-00419-FL, slip op. at 5-6 (E.D.N.C. Feb. 9, 2010).

In *Bank of America, N.A. v. Dominguez (In re Dominguez),*[31] the debtor, whose Chapter 13 plan stated that a mortgage claim was "not included" among the claims governed by the plan, objected to a Notice of Payment Change filed by Bank of America under Fed. R. Bankr. P. 3002.1.[32] The court held that the plan's mere reference to the mortgage claim, a reference which served only to clarify that the mortgage claim was *not* governed by the plan, did not effectuate the exact opposite result and render the claim one that *was* governed by the plan. In other words, the court held that the plan's reference to a claim's being paid directly outside the plan pursuant to contract terms did not support the conclusion that the plan had "provided for" the claim.[33]

Several of the cases cited by Debtor to support her position are not directly on point. In *In re Chappell*,[34] the debtors' Chapter 13 plan provided for the payment of the full amount of their mortgage holder's claim through payments to be made through the plan—clearly "providing for" the debt. After the debtors completed their payments under the plan—and the mortgage holder's claim was paid in full—the mortgage holder argued that it was entitled to additional interest. The mortgage holder contended that its claim had been provided for in the plan under § 1322(b)(5) and was therefore excepted from discharge under § 1328(a)(1). The Seventh Circuit disagreed, finding that the debtors' plan had not treated the mortgage holder's claim under § 1322(b)(5) and that § 1328(a)(1) was not implicated. *Chappell* is distinguishable from this case because in *Chappell*,

---

[31] Case No. 1:12-cv-24074-RSR (Doc. No. 25) (S.D. Fla. Sept. 24, 2013). The District Court's decision in *Dominguez* is currently on appeal to the Eleventh Circuit Court of Appeals (Case No. 13-14864). As of the date of this memorandum opinion, the briefing in the Eleventh Circuit is not complete.

[32] Rule 3002.1 requires lenders whose claims are secured by a security interest on the debtor's principal residence and are "provided for" under § 1322(b)(5) to file notices of payment changes resulting from changes in the loan's interest rate or an escrow account (*e.g.,* that is maintained for taxes and insurance) adjustment.

[33] This Court addressed the applicability of Rule 3002.1 in *In re Merino*, 2012 WL 2891112 (Bankr. M.D. Fla. July 16, 2012). The Court's holding is limited to the issue addressed and made no finding that the cure of a default is necessary for a claim to be considered "provided for" under § 1322(b)(5).

[34] 984 F.2d 775 (7th Cir. 1993).

the debtors paid the mortgage holder's claim in full through the plan, while in this case, the Debtor paid Suncoast directly outside the Plan, including payments made beyond the life of the Plan.

And in *In re Silver*,[35] the issue was whether obligations under a domestic support agreement were "in the nature of support" and, therefore, excepted from discharge under § 523(a)(5).[36] Although the debtor's former spouse argued that the claim was excepted from discharge as a "long term debt" treated under § 1322(b)(5), the court found that the debtor's plan treated the claim as an unsecured claim; because the debt was not in the nature of support but rather was in the nature of a property settlement, it was subject to discharge.[37]

This Court concurs with the courts' reasoning in the *Huyck, Hunt,* and *Dominguez* cases. The mere mention of a creditor in a debtor's Chapter 13 plan, without more, does not result in that creditor's claim being "provided for" under the plan. And a Chapter 13 plan that does not modify the rights of a secured creditor under the plan "leave[s] unaffected" the rights of that creditor under § 1322(b)(2). If the rights of a holder of a claim are left unaffected, the claim is not discharged. This is the case notwithstanding § 1328(a)'s silence on whether a debt "left unaffected" under § 1322(b)(2) is excepted from discharge. Finally, even if it were determined that a claim paid "outside the plan" is still "provided for" under the plan, when that claim is "long term debt" and the plan proposes for the debtor to maintain payments, the claim is provided for under § 1322(b)(5) and excepted from discharge under § 1328(a)(1). This is the case, as explained by the court in *Jones v. Branch Banking & Trust Co.*,[38] even if payments are current on the petition date and there is no default to be cured.

---

[35] 2013 WL 4498813 (Bankr. N.D. Ga. July 22, 2013).
[36] § 1328(a)(2).
[37] Debts that are non-dischargeable under § 523(a)(15) in Chapter 7 cases are dischargeable in Chapter 13 cases. *See* § 1328(a)(2).
[38] Case No. 5:09-CV-00419-FL, slip op. at 5-6 (E.D.N.C. Feb. 9, 2010).

Accordingly, for the foregoing reasons, Debtor's Motion for Summary Judgment (Doc. No. 25) is DENIED and Suncoast's Motion for Summary Judgment on its Prime Complaint (Doc. No. 29) is GRANTED. The Court determines that Suncoast's claims were not included in Debtor's Chapter 13 discharge and will enter a separate judgment accordingly.

The Clerk's Office is directed to serve a copy of this Order on interested parties via CM/ECF.